**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF ARKANSAS**
**WESTERN DIVISION**

**UNITED STATES OF AMERICA**                                          **PLAINTIFF**


**v.**                              **CASE NO. 4:07-CR-00062-01 GTE**


**LESTER McKEY**                                                   **DEFENDANT**

**ORDER ON MOTION TO SUPPRESS**

The motion presently before the Court is Defendant's Motion to Suppress.  Previously,

the parties agreed that a *Franks* hearing would be beneficial to the determination of this matter,

and therefore, the Court granted Defendant's request for a *Franks* hearing.  The Court reserved

ruling on the merits of Defendant's Motion to Suppress until after the hearing, which occurred on

September 6, 2007.

**I.  Background**

On December 14, 2006, various law enforcement officers entered Defendant's residence

at 317 North Chestnut Street, Morrilton, Arkansas, pursuant to a search warrant issued by the

Honorable Scott Adams, District Court Judge.  The search warrant was based on an Affidavit for

Search Warrant submitted to Judge Adams on December 14, 2006, by affiants Lt. Rusty Quinn

and Special Agent Scott Luter.  The Affidavit states in pertinent part:

> On December 14, 2006, your affiants, Lt. Rusty Quinn and S/A Scott Luter, met
> with a confidential informant to arrange for a controlled drug purchase from Zuri
> Wright.  The informant was provided with $400 in U.S. currency (photocopied
> prior to use) and was also fitted with an audio/video recording device.  CI and
> CI's vehicle were searched by your affiants for any controlled substances or
> contraband, with none being found.  CI was released to make contact with Zuri
> Wright at approximately 11:30 a.m.  CI relayed to your affiants that s/he met with

Zuri Wright and provided Wright with the photocopied buy money, and left the area for approximately twenty minutes (during which time s/he was under the observation of your affiants).

CI met with Wright a second time, at which time he was provided a white powder substance, left the area, and met again with your affiants.  Upon reviewing the video recording, your affiants observed Lester McKey (known to them) arriving at the location where CI and Wright met.  McKey was driving a white four-door Cadillac, which your affiants have observed him driving for several months.  Upon further review of the video, your affiants observed Zuri Wright reach inside Lester McKey's vehicle and then place the same hand inside his pocket.  McKey then left the area in his vehicle and traveled to the above-described residence, where he parked and went inside his residence.

### III.  Law

In *Franks v. Delaware,* 438 U.S. 154, 155-56, 98 S. Ct. 2674, 2676 (1978), the Supreme

Court reversed a decision of the Supreme Court of Delaware holding that a defendant under no

circumstances may challenge the veracity of a sworn statement used by police to procure a search

warrant.  The Court held:

> [W]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request. **In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit.**

*Id*. (emphasis added).  "The same analysis applies to omissions of fact. The defendant must

show: (1) that facts were omitted with the intent to make, or in reckless disregard of whether they

make, the affidavit misleading; and (2) that the affidavit, if supplemented by the omitted

information, could not support a finding of probable cause.  *United States v. Reinholz*, 245 F.3d

765, 774 (8th Cir. 2001).

Additionally, in *United States v. Williams*, 477 F.3d 554, 557 (8th Cir. 2007), the Eighth

Circuit stated:

> The Fourth Amendment requires a showing of probable cause before a search
> warrant may be issued. Determinations of probable cause must be premised on the
> totality of the circumstances. "The task of the issuing magistrate is simply to make
> a practical, common-sense decision whether, given all the circumstances set forth
> in the affidavit before him ... there is a fair probability that contraband or evidence
> of a crime will be found in a particular place." *Illinois v. Gates,* 462 U.S. 213,
> 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).
> . . .
>
> The Supreme Court has indicated that a misstatement must be the product "of
> deliberate falsehood or of reckless disregard for the truth.... Allegations of
> negligence or innocent mistake are insufficient." *Franks,* 438 U.S. at 171, 98 S.Ct.
> 2674. *Franks* offers little guidance in determining whether an omission-based
> misrepresentation was made with reckless disregard for the truth or merely out of
> negligence. *See United States v. Namer,* 680 F.2d 1088, 1094 (5th Cir.1982). We
> have acknowledged that recklessness may be "inferred from the fact of omission
> of information from an affidavit ... when the material omitted would have been
> 'clearly critical' to the finding of probable cause." *Reivich,* 793 F.2d at 961-62
> (citing *United States v. Martin,* 615 F.2d 318, 329 (5th Cir.1980)); *see also United
> States v. Jacobs,* 986 F.2d 1231, 1235 (8th Cir.1993) (stating that officers act with
> reckless disregard if they knowingly withhold facts that "[a]ny reasonable person
> would have known ... was the kind of thing the judge would wish to know.").

*Id*. at 559.

In oral argument, defense counsel cited *United States v. Taylor*, 599 F.2d 832, 836-837

(8th Cir. 1979), *United States v. Gladney*, 48 F.3d 309 (8th Cir. 1995), and *United States v.

Davis*, 471 F.3d 938 (8th Cir. 2006), in support of Defendant's arguments.  In *Taylor*, the Eighth

Circuit found that the affidavit submitted to obtain a search warrant of a house was fatally

defective because the affidavit failed to state that the surveilling officer saw the gun buyer or the

defendant enter or exit the house.  599 F.2d at 836.  The court held that "it was a conclusion,

based on mere suspicion of the surveilling agents, that the house in question contained the

firearms" and that "either [the gun buyer] or the defendant actually entered or exited the house in

question."  *Id*.  "Consequently, the official who issued the warrant relied on that same

conclusion."  *Id*.  The court stated that "it is elementary that the magistrate or other official who

issues a search warrant on the basis of an affidavit cannot rely on facts set forth in the affidavit

which raise a mere suspicion or conclusion which he equates to a proper finding of probable

cause."  *Id*. at 836-37 (citing *Gillespie v. United States*, 368 F.2d 1, 4 (8th Cir. 1966)).  The court

further stated that the affidavit fell short of the standards set forth in *Draper v. United States*, 358

U.S. 307, 313, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959), *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct.

1509, 12 L.Ed.2d 723 (1964), *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d

637 (1969), and other Supreme Court decisions focusing on this issue.

In *Gladney*, the Eighth Circuit stated, "When the magistrate relied solely on the affidavit

presented to him, 'only that information which is found within the four corners of the affidavit

may be considered in determining the existence of probable cause.'" 48 F.3d at 312 (citing

*United States v. Leichtling,* 684 F.2d 553, 555 (8th Cir. 1982), *cert. denied,* 459 U.S. 1201, 103

S.Ct. 1184, 75 L.Ed.2d 431 (1983)).  "Affidavits must be read in 'a common-sense and realistic

fashion.'"  *Id*. (citing *United States v. Cadwell,* 864 F.2d 71, 74 (8th Cir. 1988) (citing *United*

*States v. Ventresca,* 380 U.S. 102, 108, 85 S.Ct. 741, 746, 13 L.Ed.2d 684 (1965))).  In *Davis*, the

Eighth Circuit noted that a statement that firearms were in "plain view," when they were not,

could not be insulated from a finding that the statement was made in reckless disregard of the

truth simply because "it was relayed through two officers who were both unaware of the truth."

471 F.3d at 947 and n.6.

## III.  Arguments & Conclusions

Defendant alleges that certain statements sworn to by Lt. Quinn and S/A Luter are false

and that without these false statements, the affidavit would not have supported probable cause for

the issuance of the search warrant.  Specifically, Defendant states that the false statements

include (1) that the officers' upon reviewing the video recording observed Lester McKey in a

white, 4-door Cadillac; and (2) that the officers observed Lester McKey driving the white

Cadillac for several months prior to swearing the affidavit.  Defendant argues that because the

facts stated in the affidavit, without the falsely included information, are insufficient to support a

finding of probable cause, and all evidence and statements by Defendant were the product of the

officers' serving a search warrant at the residence of Defendant in violation of the Fourth and

Fourteenth Amendments, such evidence and statements should be suppressed as fruit of the

poisonous tree.

First, Defendant states that he did not have possession of the white vehicle "for several

months" prior to the search on December 14, 2006, and in fact, only took possession of the

vehicle sometime after December 8, 2006.  Defendant submits the affidavit of Pat Huston, who

was a co-owner of the vehicle until December 8, 2006, when Pat Huston and Beatrice Garret sold

the car to Ricky Horn, Horn Auto.  Affiant Huston states that prior to the sale of the car it was in

their possession, and "I am not personally acquainted with Lester McKey and prior to the sale of

the vehicle to my knowledge he had never driven this car."  Defendants also submit the affidavit

of Ricky Horn, owner of Horn Auto Sales, stating that he purchased the Cadillac from Pat

Huston and Beatrice Garrett on December 8, 2006, and Lester McKey took possession of the

vehicle on December 8, 2006.

In their written response, and at the hearing, the Government conceded that the phrase

"for several months" is incorrect and states that Lt. Quinn advised them that the affidavit

incorrectly stated, " . . . for several months."  However, Lt. Quinn testified that he had seen

McKey drive the vehicle the day before the drug transaction, and the Government argues that

regardless of the inclusion of the phrase "for several months," the officers knew that McKey

drove the Cadillac because they had seen it on the undercover video recording.  Lt. Quinn's

investigative notes state, "This investigator then went and reviewed the video evidence and

positively identified a black male who delivered the cocaine to (CI) as Zuri Wright, and a white

in color four door Cadillac, which I had previously seen Lester McKey driving as the vehicle that

delivered the cocaine to Zuri Wright."  Additionally, Lt. Quinn testified that the affidavit was

drafted by a deputy prosecuting attorney, that he, Lt. Quinn, "skimmed" it, and did not notice the

error before signing the affidavit.  The Government argues that striking the phrase "for several

months" does not diminish the probable cause in the affidavit.

Second, Defendant states that although a white vehicle appears on the video recording

submitted to the Court, the driver of the vehicle cannot be observed.  The Government responds

that the statement "Upon reviewing the video evidence, your affiants observed Lester McKey" is

accurate because the officers stated precisely what they knew based upon the video evidence,

their observation of McKey driving this vehicle the day prior, and the fact that the informant

positively identified McKey as the driver of the white Cadillac he captured on the undercover

video.  The Government further states that the officers' contemporaneous hand-written and later

typed investigative notes reflect that the informant told the officers that McKey was the driver of

the Cadillac.  Lt. Quinn's investigative notes state, "(CI) stated that (CI) and Zuri waited outside

and a white in color four door Cadillac pulled up, which (CI) identified the only occupant as the

driver to be a black male named Lester McKey.  (CI) stated that (CI) was standing close to Zuri

and Lester."  S/A Luter's hand written notes state, "(CI) state white cadilacte [sic] pulled 4/door

up and the driver was a black male (CI) identified as Lester McKey."  The Government contends

that the statement is the officers' conclusion based upon their investigation and is accurate.  The

Government argues that it is important that the officers did not say they "identified" McKey, but

that they "observed" him because McKey cannot be "identified" on the video, but could be

observed because they know it is him.

At the hearing, Defendant also argued that the last sentence of the affidavit is false, and

without this false statement, the affidavit would not have supported probable cause for the

issuance of the search warrant.  The last sentence states, "McKey then left the area in his vehicle

and traveled to the above-described residence, where he parked and went inside his residence."

At the hearing, the officer admitted he did not in fact observe Mr. McKey travel to the residence,

park, and go inside.  Rather, he inferred this from the fact that he observed Mr. McKey leave the

surveilled area, instructed another officer to go to Mr. McKey's residence, and was informed by

that officer that a white, 4-door Cadillac was parked outside the residence.

Here, had the affiants described the sources of their information, the reliability of the

confidential informant, and the conclusions they drew based upon on the facts before them, it is

obvious that the officers had ample evidence to support the issuance of a search warrant.  The

confidential informant was there when the Defendant drove up, and the confidential informant saw and recognized the Defendant in a white Cadillac.  Furthermore, the confidential informant told the officers this and the video further confirmed this information.  However, they did not fully convey this information to the magistrate in the affidavit.  Were the Court to hold the factual existence of probable cause to be sufficient, without communication of these essential facts to the magistrate, the requirement of the neutral and detached magistrate would essentially be a nullity.  Therefore, the Court must proceed to analyze the affidavit under the standard enunciated in *Franks*.

First, the Court must determine whether the statements in the affidavit were false.  The Government has conceded that the statement "for several months" was false.  However, even if "for several months" is deleted, it would not impact the probable cause determination.  Therefore, the Court need not consider this issue further.

As to the statement "McKey then left the area in his vehicle and traveled to the above-described residence, where he parked and went inside his residence," Lt. Quinn's testimony confirms at the time he made the statement, he did not actually see this happen, and that he did not know whether that sentence was true.  Therefore, the statement is false.

The Court also finds that the statement, "Upon reviewing the video recording, your affiants observed Lester McKey (known to them) arriving at the location where CI and Wright met," is false because the statement leads the reader to believe that the affiants ascertained the identity of Mr. McKey "[u]pon reviewing the video recording."  The Government admits that Mr. McKey cannot be identified from the video recording.  Additionally, Lt. Quinn testified that

he could not say that he "actually observed" Mr. McKey in the Cadillac on the date of the arrest. Alternatively, the affiant omitted information regarding the source (the confidential informant) of his identification of Mr. McKey.

Next, the Court must determine whether the false statements were made knowingly and intentionally, or with reckless disregard for the truth, or whether facts were omitted with the intent to make, or in reckless disregard of whether they make, the affidavit misleading. It is clear that the affiants did not knowingly or intentionally make false statements. At the hearing, Lt. Quinn testified that he reported all of the information he had to the deputy prosecuting attorney, and relied upon the deputy prosecuting attorney to draft it. Therefore, the question is whether the affiants made the statements with reckless disregard for the truth of those statements, or whether facts were omitted in reckless disregard of whether they make the affidavit misleading. As stated above, recklessness may be inferred from the fact of omission of information from an affidavit when the material omitted would have been "clearly critical" to the finding of probable cause, and officers act with reckless disregard if they knowingly withhold facts that any reasonable person would have known was the kind of thing the judge would wish to know. *United States v. Williams*, 477 F.3d at 559.

Lt. Quinn testified that he did not read the affidavit, but merely "skimmed through it looking for some irregularities if I catch them." He also testified that he relied upon the deputy prosecuting attorney to properly prepare the affidavit after he provided the necessary truthful factual information. Recklessness may be inferred from the omission of the source of the identification of Mr. McKey from the affidavit because the source was clearly the confidential informant, rather than one of the affiant officers. In this situation, the reliability of the

confidential informant would have been "clearly critical" to the finding of probable cause.[1]

Additionally, Lt. Quinn testified that he and the deputy prosecuting attorney discussed the

inclusion of information regarding the confidential source, but decided against it because to do so

would require that the informant be exposed.  The Court has difficulty in understanding this

explanation because the fact that the confidential informant was the source of some of the

information was revealed in other parts of the affidavit.  To state that the confidential informant

was the source of the identification of Mr. McKey would not have further exposed him.  Neither

would the inclusion of information regarding the reliability of the informant.  Thus, Lt. Quinn

knowingly withheld the fact that the source of the identification was a reliable confidential

informant, and any reasonable person would have known that such information was the kind of

thing the judge would wish to know.[2]  Therefore, the Court finds that the false statements were

---

[1]From the testimony at the hearing, it is clear that Lt. Quinn had factual information concerning his past use of the confidential informant which would have established the reliability of the confidential informant if that information had been set forth in the affidavit submitted to the magistrate.  And, this information could have been included without compromising the identify of the confidential informant.

[2]In *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332 (1983), the Supreme Court reaffirmed that the totality-of-the-circumstances analysis applies to probable cause determinations, and stated that "[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." The Court noted, however, that it did not abandon the "concern for the trustworthiness of informers and for the principle that it is the magistrate who must ultimately make a finding of probable cause." *Id*. at 239 n.11.  The Court further stated, "Sufficient information must be presented to the magistrate to allow that official to determine probable cause; his action cannot be a mere ratification of the bare conclusions of others." *Id*. at 239.  Furthermore, the Eighth Circuit has stated, "When the affidavit is based substantially on information provided by an informant, evidence of the informant's reliability, veracity, and basis of knowledge is highly relevant to the probable cause determination, and may occasionally be critical." *United States v. Ketzeback*, 358 F.3d 987, 991 (8th Cir. 2004) (citing *Illinois v. Gates*, 462 U.S. 213, 230, 103

made, and facts were omitted, in reckless disregard of whether the false statements were true and whether the omitted statements made the affidavit misleading.

In so finding, the Court emphasizes the importance of the oath. Before one attests under oath that the facts set forth in an affidavit are true, the law assumes that the person has read over the affidavit carefully. "Skimming it" is clearly not sufficient. By signing the affidavit for search warrant, Officers Quinn and Luter represented to the reviewing judge that the facts stated therein were factually accurate. As noted, the affidavit as submitted was materially misleading. To label Officer Quinn's conduct merely negligent would trivialize and arguably nullify the warrant process. Materially false affidavits could then always be excused by the very officers who affirmed their veracity, simply by claiming that they skimmed them or did not read them carefully. The Court holds that Officer Quinn's failure to carefully read the draft affidavit to be sure the that information contained therein was true and accurate constitutes reckless disregard.

So, we have here a case where able law enforcement officers had, through their investigation, clearly obtained sufficient information to support the search warrant they sought, but they failed to properly bring this information before the magistrate. There is no evidence of any intent to deceive. But, we have here more than simple negligence. There was reckless

---

S.Ct. 2317, 76 L.Ed.2d 527 (1983); *United States v. Mathison*, 157 F.3d 541, 548 (8th Cir. 1998)). It is clear that the standard applied to the statements attributed to a confidential informant is more stringent than that applied to an officer who makes a statement based upon his own observations. Therefore, in assessing whether probable cause exists, and the reliability of the information provided in the affidavit, any reasonable person would have known that the fact that the source of information was a confidential informant, rather than an officer, was the kind of thing the judge would wish to know.

disregard in failing to carefully read the draft of the affidavit to be sure that the information provided was true and adequate to support a finding of probable cause.

Finally, if the last sentence of the affidavit is omitted, there is no link between the home to be searched and the buy money.  Additionally, the Court must disregard the identification of Mr. McKey since the affiants did not identify him themselves, and did not disclose the source of that identification.  Therefore, there is no factual predicate set forth in the affidavit for connecting Mr. McKey to the drug deal involving the confidential informant and Zuri Wright and no nexus between the home to be searched and the evidence sought.  The Court therefore concludes that, after omitting the affidavit's false material, the affidavit's remaining content is insufficient to establish probable cause.  The search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit.

Accordingly,

 IT IS THEREFORE ORDERED that Defendant's Motion to Suppress (Docket No. 20) be, and it is hereby, GRANTED.

Dated this 10th day of September, 2007.

/s/Garnett Thomas Eisele_____
UNITED STATES DISTRICT JUDGE